```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
Frederick R. Napierala,

                        Plaintiff,            07-CV-0706

           v.                                 **DECISION**
                                              **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                        Defendant.
_____
```

## Introduction

Plaintiff Frederick R. Napierala ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[1] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Alan L. Bergstrom, as affirmed by the Social Security Appeals Council ("Council"), denying his application for benefits was against the weight of substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on grounds that the ALJ's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. Plaintiff cross-moves for judgment on the

---

[1]This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated October 29, 2009.

pleadings pursuant to Rule 12(c), seeking reversal of the Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings.

## **Background**

### I. **Procedural History.**

On March 31, 2003, Plaintiff, who was then 54 years old and a garbage collector and garbage truck driver, filed an application for Disability Insurance Benefits under Title II, §§ 216(i) and 223 of the Social Security Act ("the Act"). Plaintiff claimed a disability since August 28, 2002, due to "dominant [right] shoulder impairment, bilateral knee impairment, and lumbar neurogenic claudication". (Transcript of the Administrative Proceedings at page 72) (hereinafter "Tr."). On July 15, 2003, the Social Security Administration ("the Administration") found Plaintiff to be disabled commencing March 12, 2003. (Tr. at 31). Plaintiff filed a timely request for hearing on September 15, 2003. (Tr. at 44).

Thereafter, Plaintiff appeared via video conference, with counsel, at an administrative hearing before ALJ Alan L. Bergstrom on February 8, 2005. (Tr. at 167). In a decision dated February 22, 2005, the ALJ determined that Plaintiff's period of disability commenced on September 12, 2003. (Tr. at 26). Plaintiff filed a timely request for a review of the hearing decision on April 7,

2005. (Tr. at 12). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on August 29, 2007. (Tr. at 5). On October 23, 2007, Plaintiff filed this action.

## II. **The Evidence.**

### A. **EMG and examining physician Dr. Hoffman's reports.**

Examining physician Dr. Hoffman reported the results of the nerve conduction and electromyographic studies ("EMG") of Plaintiff's legs dated June 12, 2001, which suggested both lumbar radiculopathies and axonal polyneuropathy, mild distal sensory loss, no distal paresthesias, lumbar neurogenic claudication of both legs, and a mild lateral cutaneous neuropathy. (Tr. at 103, 104).

On May 6, 2004, Dr. Hoffman again examined Plaintiff and reported to the Worker's Compensation Board that Plaintiff consulted him regarding leg numbness and accordingly, he requested authorization for a lumbar MRI. (Tr. at 146). Dr. Hoffman reported the results of the MRI to the Worker's Compensation Board on June 22, 2004 which showed degenerative disc disease and spondylosis resulting in spinal stenosis. (Tr. at 145). Dr. Hoffman noted that Plaintiff's symptoms were consistent with his findings and opined that Plaintiff was "totally and permanently disabled from working." Id.

**B. MRI.**

An MRI of Plaintiff's left knee dated October 29, 2001 showed abnormality of the anterior cruciate ligament ("ACL"), degenerative or post-traumatic changes, moderately severe abnormal softness of the cartilage, and a small build up of fluid. (Tr. at 96, 97).

**C. Treating orthopedic surgeon Dr. Wild's reports.**

On November 19, 2001, Dr. Wild referred to an on-the-job injury suffered by Plaintiff on January 10, 2001 in a report to the Worker's Compensation Board. (Tr. at 102). Dr. Wild reported that Plaintiff complained of left knee pain, a sensation of buckling in the knee, and pain when using stairs. Id. Upon examination, Dr. Wild noted modest effusion, tender medial joint line, very slightly limited range of motion, and stable collateral ligaments. Id. Dr. Wild opined Plaintiff was symptomatic with torn cartilage and recommended arthroscopic knee surgery which Plaintiff declined. Id. Plaintiff stated that he would continue to work with the help of anti-inflammatories. Id.

Dr. Wild reported to the Worker's Compensation Board the results of his examination of Plaintiff on February 4, 2002, due to pain, stiffness and loss of mobility in Plaintiff's right shoulder as a result of the January 10, 2001, injury. (Tr. at 100). Dr. Wild noted that Plaintiff suffered from advanced glenohumeral arthritis with an intact rotator cuff. Id. Dr. Wild reported that Plaintiff was not interested in surgery at that time but wanted to work until he could retire before pursuing surgical treatment. Id. Plaintiff

would continue to take the pain medications Celebrex and hydrocodone as needed. Id.

On April 12, 2002, Dr. Wild reported to the Worker's Compensation Board that Plaintiff had an 80% loss of use of his right shoulder and would require a shoulder prosthesis to relieve future pain. (Tr. at 99). Dr. Wild noted that Plaintiff continued to take pain medication and to work everyday. Id. On June 7, 2002, Dr. Wild again reported to the Worker's Compensation Board that Plaintiff continued to complain of pain and loss of mobility in his right shoulder and was working using exclusively his left shoulder. (Tr. at 98). Dr. Wild stated that Plaintiff "has virtually absent internal and external rotation of his shoulder" and was "symptomatic from traumatic arthritis" of his shoulder. Id. Dr. Wild recommended Plaintiff continue taking the pain medications Celebrex and hydrocodone and continue to work in spite of his "prominent disability due to arthritis of his shoulder." Id.

**D.** **Examining consultative internist Dr. Holland's report.**

On May 21, 2003, Dr. Holland reported that Plaintiff complained of right shoulder pain, decreased range of motion, decreased ability to dress himself, legs going numb with prolonged standing and walking, falls resulting from leg numbness, and left knee pain, burning, and swelling with increased pain when walking. (Tr. at 110). Dr. Holland reported Plaintiff took hydrocodone, Motrin and Celebrex as needed for the pain, used prescribed crutches and a cane. (Tr. at 111).

Plaintiff reported to Dr. Holland that his daily activities included showering and dressing himself, watching TV, listening to the radio, reading, going out for coffee and socializing but did not include cooking, cleaning, laundry, shopping, and engaging in childcare. (Tr. at 111).

Upon examination, Dr. Holland found Plaintiff had normal stance and gait but could not walk on his heels, used no assistive devices, needed no help getting on and off the examining table or in rising from a chair. (Tr. at 112). Dr. Holland noted Plaintiff's right shoulder appeared lower than his left shoulder, muscle atrophy in the right side of his back, upper trapezius, and the upper muscles across the shoulder. Id. Plaintiff's right knee had a small amount of fluid but was otherwise normal. Id.

Dr. Holland diagnosed Plaintiff with a shoulder injury, leg numbness, and knee derangement by history. Dr. Holland gave a guarded prognosis for the shoulder and leg numbness, and a fair prognosis for the knees and "moderate-to-severe limitations to prolonged standing, heavy lifting, and lifting over his head." (Tr. at 113).

**E. X-rays.**

X-rays dated May 21, 2003, showed marked degenerative disc disease at L3-L4, moderate degenerative disc disease at L4-L5 and L5-S1, slippage of L3 due to facet arthritis, and large bone spurs in the lower thoracic and lumbar spine. (Tr. at 114).

**F. Treating cardiologist Dr. Albrecht's report.**

Treating cardiologist, Dr. Albrecht examined Plaintiff on May 20, June 17, and July 24, 2003. (Tr. at 123-129). He noted that the results of an EKG dated May 22, 2003, showed atrial fibrillation and stated that Plaintiff suffered from chronic atrial fibrillation, minimal left ventricular and biatrial enlargement, poor heart rate control, and no distress. (Tr. at 123-29). Dr. Albrecht prescribed Toprol, a beta blocker and aspirin therapy. Id. At the July 24, 2003, follow-up examination, Dr. Albrecht stated Plaintiff was "doing very well", his resting heart rate was 70 beats per minute, and that Plaintiff could wait one year before the next examination. (Tr. at 123).

**G. Disability analyst K. Maddow's Residual Functional Capacity assessment.**

On June 24, 2003, the analyst stated Plaintiff could occasionally lift and/or carry 20 lbs., frequently lift and/or carry 10 lbs., stand and/or walk about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and limited push and/or pull in the upper extremities. (Tr. at 116). The analyst restricted Plaintiff from frequent overhead reaching and noted no postural, visual, communicative, or visual limitations. (Tr. at 117-18).

The ALJ referred to K. Maddow as a medical consultant. (Tr. at 22). The ALJ indicated that he considered the RFC assessment and gave it "significant, but not controlling, weight in conjunction

with other relevant evidence. . . ." (Tr. at 22). However, Plaintiff argues and Defendant concedes that K. Maddow is not a medical doctor but a disability analyst. (Plaintiff's Memorandum at 16, Defendant's Reply Memorandum at 1).

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation

omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. Substantial evidence exists in the record to support the ALJ's decision.

### A. The ALJ properly applied the five-step analysis to conclude that Plaintiff was not disabled under the Act.

The Act defines disability as "physical or mental impairment or impairments [. . .] of such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 223(d)(2). In this case, the ALJ found Plaintiff was not under a disability within the meaning of the Act during the period of August 28, 2002 through September 11, 2003. (Tr. at 26).

In reaching his conclusion, the ALJ adhered to the Administration's five-step sequential analysis for evaluating

applications for disability benefits. See 20 C.F.R. § 404.1520.[2] Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on August 28, 2002. (Tr. at 25).

At Step 2, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine with a small disc herniation at the L2-3 level, lumbar neurogenic claudication affecting the lower extremities, a right shoulder impingement with muscle atrophy, and degenerative joint disease of the left knee, and the non-severe impairments of atrial fibrillation, and a ganglion cyst. (Tr. at 22, 25).

At Step 3 of the 5-step analysis, the ALJ concluded that Plaintiff's severe impairments do not meet or medically equal in severity the criteria for any impairment listed in 20 CFR § 404, Subpart P, Appendix 1. (Tr. at 25).

Further, at Step 4, the ALJ found Plaintiff unable to perform his past relevant work as a garbage collector and a garbage truck driver. (Tr. at 23). The ALJ found Plaintiff's residual functional capacity ("RFC") exertional limitations to include the ability to occasionally lift and/or carry 20 pounds and frequently lift and/or

---

[2]Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

carry 10 pounds using his non-dominant upper extremity, stand and/or walk for 6 hours in an 8 hour work day, sit for 8 hours in an 8 hour work day, and a limited ability to push and pull with his right, dominant hand. (Tr. at 23). Plaintiff's RFC non-exertional limitations restrict him from climbing, crawling, overhead reaching or overhead working with his right hand, concentrations of vibrations to his right shoulder, allow him to occasionally tolerate gross handling with his right hand, and to frequently tolerate exposure to a cold and wet work environment. (Tr. at 23).

Finally, at Step 5, the ALJ found that considering Plaintiff's age, education, work experience and RFC, jobs exist in the local and national economy which Plaintiff could perform. (Tr. at 23-25). However, upon turning age 55, Plaintiff became a "person of advanced age" and therefore, disabled. 20 CFR § 404, Subpart P, Appendix 2, Rule 202.06. Specifically, the ALJ found that although Plaintiff's limitations prevented him from performing a full range of light work, prior to turning age 55, Plaintiff could perform the unskilled job duties of office helper, order caller, and a warehouse checker. (Tr. at 24) In reaching this finding, the ALJ relied on the testimony of the vocational expert. (Tr. at 24).

### B. **Substantial evidence exists in the record to support the RFC finding.**

Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff had the RFC to work at a limited range of light exertional work. (Plaintiff's Memorandum at 16).

Specifically, Plaintiff argues that the ALJ erred in assigning significant weight to the DDS analyst's opinion, no medical opinion supports the RFC finding, the ALJ improperly disregarded the opinion of examining physician Dr. Holland, and Plaintiff's work record prior to the onset of disability and his activities of daily living do not support the ALJ's decision. (Plaintiff's Memorandum at 16-19).

Defendant argues that light work which "requires a person to stand and walk 'on and off' for six hours in an eight hour day with intermittent sitting during the remaining time" is consistent with Dr. Holland's opinion limiting Plaintiff from prolonged standing. (Defendant's Memorandum at 21).

A claimant's RFC represents the most the claimant can still do in spite of his limitations based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a). The ALJ must assess the claimant's exertional limitations which include the physical ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. § 404.1545(b). The ALJ must also assess the claimant's nonexertional limitations which include his mental ability as well as postural and manipulative limitations. Id. Substantial evidence must exist in the record to support the ALJ's assessment of each functional area. Martone v. Apfel, 70 F.Supp. 2d 145, 150 (N.D.N.Y. 1999).

The Administration distinguishes "light work" from "sedentary work" when a job requires "a good deal of walking or standing." SSR

83-10. The Administration further describes light work as requiring "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Id.

### 1. **Although the ALJ improperly assigned significant weight to the disability analyst's RFC assessment, substantial evidence exists in the record supporting the ALJ's RFC determination.**

The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairment affects his ability to work. 20 C.F.R. § 404.1513(c),(d). Disability analysts are not considered acceptable medical sources and their non-medical opinions should not be given significant weight in the RFC assessment. 20 C.F.R. § 404.1513(a); Dejesus v. Barnhart, 2007 WL 528895, at 7 (W.D.N.Y., Feb. 13, 2007); Lawton v. Astrue, 2009 WL 2867905, at 16 (N.D.N.Y., Sept. 2, 2009).

In this case, the ALJ stated that he "evaluated and considered" the analyst's RFC assessment "in conjunction with other relevant evidence" including the objective medical evidence, Plaintiff's testimony and his written statements of activities of daily living. (Tr. at 22, 23). Although I find the ALJ improperly assigned significant weight to the disability analyst's non-medical opinion, substantial medical evidence exists in the record supporting the ALJ's determination of plaintiff's RFC.

## 2. **Substantial medical evidence supporting the RFC finding exists in the record.**

Plaintiff contends that the record does not contain evidence to support the RFC finding that Plaintiff can stand and walk a total of six hours during the workday. (Plaintiff's Memorandum at 16).

In making the RFC finding, the ALJ must consider the opinion of an "acceptable medical source" about a claimant's ability to do work activities. 20 C.F.R. § 404.1513(c). However, the ALJ must not give any special significance to the source of an opinion on issues such as RFC which are reserved to the Commissioner who has the final responsibility to determine a claimant's RFC. 20 C.F.R. § 404.1527(e). In addition, the evidence in the record must be complete enough to allow the ALJ to make a determination. 20 C.F.R. § 404.1513(e)3. If deficiencies exist in the record, the ALJ has a duty to develop the record, even if the claimant is represented by counsel. Rosa v. Callahan, 168 F.3d 72 (2d Cir. 1999).

In this case, the ALJ reviewed "the objective medical evidence and Mr. Napierala's testimony regarding his symptoms and limitations along with written statements as to his activities of daily living" to conclude that the evidence showed Plaintiff retained the RFC for a limited range of light work prior to his attaining 55 years of age on September 12, 2003. (Tr. at 23, 25, 26). Specifically, the ALJ evaluated medical evidence from EMG studies, MRIs, x-rays, an EKG, examinations conducted by treating orthopedic surgeon Dr. Wild, treating physician Dr. Albrecht, treating physician Dr. Hoffman, and

consultative examining physician Dr. Holland. (Tr. at 21-23). However, only the evidence from Dr. Holland contains a medical source statement and that statement fails to quantify Plaintiff's physical abilities. (Tr. at 110-114).

As the ALJ notes, the records from an emergency room visit in April 2003 due to a sprained ankle are the first medical records dated after August 28, 2002. (Tr. at 21, 105). The only evidence from treating orthopedic surgeon Dr. Wild that exists in the record after the alleged onset of disability, is a referral for a neurologic examination due to Plaintiff's falling caused by leg numbness dated March 31, 2004. (Tr. at 130). The ALJ considered Dr. Wild's report prior to August 28, 2002 which showed that in November 2001, Plaintiff chose to take anti-inflammatories and continue to work despite torn knee cartilage and recommended knee surgery. (Tr. at 21, 102). In June 2002, Dr. Wild reported that Plaintiff was working everyday and recommended that he do so but continue taking the arthritis medication Celebrex and the pain medication hydrocone. (Tr. at 98).

The ALJ considered treating cardiologist Dr. Albrecht's reports of his examinations of Plaintiff on May 20, June 17, and July 24, 2003 and the final report that Plaintiff was doing well on his medications and did not need to be re-examined for one year. (Tr. at 21, 22, 123). Dr. Albrecht gave no opinion about Plaintiff's ability to work.

The ALJ considered examining physician Dr. Hoffman's comment that Plaintiff's left knee required only "longitudinal observation" in his report of EMG findings dated June 12, 2001 and gave no opinion about Plaintiff's ability to work. (Tr. at 22, 103-04). In June 2004, after Plaintiff turned 55, an MRI showed a small disc herniation at L2-3, degenerative disc disease at L3-4, and L4-5, spondylosis, and spinal stenosis. (Tr. at 22, 145). At that time, Dr. Hoffman opined that Plaintiff was totally disabled from working. (Tr. at 145).

Finally, the ALJ considered examining consultative physician Dr. Holland's statement made on May 21, 2003, that Plaintiff could stand and walk normally, needed no help getting on and off the examination table and rising from a chair. (Tr. at 21, 111). However, Dr. Holland stated that Plaintiff had moderate to severe limitations from prolonged standing, heavy lifting, and lifting over his head. (Tr. at 113). Dr. Holland noted the results of the x-ray report in making her medical source statement. (Tr. at 113).

The ALJ considered the medical evidence from Dr. Wild, Dr. Albrecht, Dr. Hoffman and Dr. Holland in determining that Plaintiff could perform a limited range of light work prior to September 12, 2003. Therefore, I find that the medical evidence in the record provides substantial evidence to support the ALJ's RFC finding.

### 3. **Plaintiff's testimony and statements provide substantial evidence of the RFC finding.**

The ALJ must consider Plaintiff's statements concerning the effects of his pain and symptoms upon his activities of daily living and ability to work. 20 § C.F.R. 404.1529. However, the ALJ must also consider whether the medical evidence shows that Plaintiff's medical impairments could reasonably be expected to produce Plaintiff's stated pain and symptoms. Id. The ALJ must then determine the effect of Plaintiff's pain and other symptoms to diminish his capacity for work activities to the extent that Plaintiff's symptoms are reasonably accepted as consistent with the objective medical evidence and other evidence. Id. Other evidence includes statements about daily activities and efforts to work. Id.

Here, the ALJ found Plaintiff's "assertions concerning his ability to work" to be "credible" although he earlier stated that Plaintiff's "allegations" were "generally credible." (Tr. at 22, 25). Plaintiff testified during the hearing that he left his job with the City of Buffalo because his legs would go numb after standing for a prolonged period, he could no longer lift anything heavy with his right shoulder, and had to steer the garbage truck with only one arm. (Tr. at 175). In addition, Plaintiff stated that he had difficulty standing, and could sit with his feet on the floor for only five or ten minutes and could sit with his legs extended for 30 to 45 minutes. (Tr. at 178). Plaintiff stated that while working, he was on his feet for one to one and a half hours during

a four hour period and avoided standing as much as possible when he was not working. (Tr. at 179). Plaintiff also testified that he swept the floor, drove for no more than 30 minutes, suffered increased pain in damp weather, and spent about three or four hours a day in a prone position. (Tr. at 186-87).

The ALJ noted that Plaintiff took his children to school and to sporting events, prepared simple meals, tried to help with light household chores, picked up a few items at the grocery store, read and attended church. (Tr. at 23). Significantly, the ALJ noted Plaintiff failed to seek medical treatment from June 2002 until April 2003, continued to work, and delayed surgery and retirement, despite his pain. (Tr. at 21, 23).

Based on the medical evidence in the record, Plaintiff's activities of daily living and his work activities provide substantial evidence to support the RFC finding by the ALJ. Therefore, I find that the ALJ applied the correct legal standard in determining plaintiff's RFC.

## Conclusion

For the reasons set forth above, I conclude that the ALJ's decision is supported by substantial evidence in the record and, therefore, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca<br>MICHAEL A. TELESCA<br>United States District Judge

Dated: Rochester, New York
      December 11, 2009